## RICE, Executor, v. THE CITY OF KEOKUK.

1 MUNICIPAL DEBT: LIMITATION. The limitation on the indebtedness of the city of Keokuk, provided by section 31 of the original charter, approved December 31st, 1848, and section 17 of the amendments thereto, approved January 22d, 1853, applies to indebtedness created by borrowing money on the credit of the city, and not to debts created by making municipal improvements.

*Appeal from Lee District Court.*

### FRIDAY, APRIL 8.

THIS action is upon two bonds for the sum of $500 each, issued by the City of Keokuk, dated February 1st, 1859, and payable two years after the date thereof to J. W. Davis or the holder.

The answer admits that the plaintiffs' intestate became in his lifetime the assignee of the said bonds, before maturity and for value.

The defense is that the bonds were for the reasons alleged in the answer, and which will be more fully set forth in the opinion, issued without authority of law, and are therefore not binding upon the city. A demurrer to the answer being sustained and exceptions taken, the defendant appeals.

*Henry Strong* for the appellant.

*J. L. Rice,* Executor, &c., *pro se.*

DILLON, J. — The bonds in suit are admitted in the answer to have been issued and delivered to Davis, the payee, under and in pursuance of a contract that he should build a calaboose or city prison and an engine house for the city, and receive in payment the bonds of the defendant. It is not contended by the appellant that the bonds were not issued for legitimate and even strictly municipal purposes. Nor, indeed, under the various provisions of the charter of the city and the several amendments thereto, would it be possible successfully to maintain that the City Council did not have the power to authorize and contract for the erection of a city prison and engine house.

The defense rests solely upon the ground that the charter and amendments thereto prohibited the City Council from incurring an indebtedness to an amount exceeding $20,000, unless the question of contracting the same should first be submitted to a vote of the people of said city and be adopted by a majority of the voters. To sustain this defense the answer alleges that at and before the date of the contract of Davis with the city to do the said work, and at the time of the doing thereof, and at the time of the issuing of the bonds in suit, the city had already incurred

an indebtedness to others of $20,000, and that the question of incurring the indebtedness to arise out of the building of the calaboose and engine house, was never submitted to a vote of the people of the city.

Whether this answer set forth a sufficient defense involves a construction of certain provisions of the charter of the city.

The defendant relies upon section 31st of the original charter, approved December 31st, 1848, and the 17th section of the amendment thereto, approved January 22d, 1863. We quote these:

" SECTION 31. The City Council, whenever they think it expedient, shall have power by ordinance to borrow money on the credit of the city, provided, it shall not exceed $20,-000, and also to appropriate money and to provide for the payment of all debts and expenses of the city."

The amendment to this section is as follows:

" SECTION 17. The provisos of sections 26 and 31 of the act to which this is an amendment, and all such portions of said act as are repugnant to the provisions of this act, are hereby repealed: Provided, as to said thirty-first section, that no debt above the amount authorized by the said thirty-first section shall be incurred by said Council unless the question of contracting the same shall be first submitted to the people of said city in the same manner as provided in the first section of this act."

Both parties are agreed, and indeed it is clear, that by section 31, as it originally stood, the power of the City Council to borrow money on the credit of the city was expressly limited to $20,000. To this extent the City Council might borrow without a vote of the people. To any greater extent they could not borrow even with a vote of the people. Under other provisions of the charter the City Council might contract liabilities in various modes and for many different purposes. But under this section

before it was amended the City Council could not incur an indebtedness for *borrowed money* beyond the prescribed limit of twenty thousand dollars.

Now, what is the effect of the amendment above quoted? In the first place it repeals the proviso of section thirty-one, that is, it repeals the $20,000 limitation. If the amendment had stopped here the effect would have been to have allowed the City Council, for proper municipal purposes, to have borrowed money *ad libitum* without restriction or limitation as to amount. But the amendment did not alone consist in repealing the limitation contained in section thirty-one, but it substituted another and different limitation. Under this amendment the City Council might incur a debt not exceeding $20,000 without a vote of the people, but for no greater amount unless the question of contracting the same should be first submitted to a vote of the people of the city. In ascertaining the meaning of this amendment we must keep in view the original section. That relates not to the creation of municipal liabilities generally, but to the creation of such liabilities in a specific mode, viz.: by borrowing money. And the limitation contained in the amendment is a limitation not on the power of the city to create municipal indebtedness generally for proper purposes, but on the power to create such indebtedness in a certain specific mode, viz.: by the borrowing of money. As amended the grant of power would be in these words: "The said City Council, whenever they think it expedient, shall have power by ordinance to borrow money on the credit of the city" and the limitation would be "*Provided* that *no debt* (that is no debt thus created, *i. e.*, for *borrowed money*), beyond $20,000 shall be incurred by said Council unless the question of contracting the same shall be first submitted, &c."

If the legislative intention had been, as contended for by the defendant, to work so radical, thorough and com-

prehensive a change in all the powers granted to the City Council by the original charter as to prohibit the city from creating any debt for any purpose beyond $20,000, without a vote of the people, such intention would have been directly and clearly expressed, and would not have been embodied in the shape of an amendment to a single section which in express terms related exclusively to the creation of a debt in a designated mode, to wit.: by borrowing money.

The view herein expressed derives some force from the thought that the sanction of a vote of the people would very naturally be required where it is proposed to borrow money which is or ought to be an unusual municipal act, but it would not be so naturally required as a condition of making, when the limit was reached, ordinary, usual and perhaps urgently necessary municipal improvements and expenditures.

This view also harmonizes with the acknowledged rule of construction that a proviso will generally be considered not to enlarge, but rather to restrain, qualify or explain the clause to which it refers. Burrill's Law Dic. Voc. "Proviso"; *Minis* v. *United States*, 15 Pet., 445; *Helefestein & Gore* v. *Cave*, 3 Iowa, 290; *Wayman* v. *Southard*, 10 Wheat., 1 and 30; Sedg. Const. Law, 62.

This view would also find no little support in the character of the various amendments made to the City Charter between 1853 and 1859. It is not necessary to refer to these in detail, as in our judgment, the construction is clear upon the face of the two sections above cited; but the general nature of those amendments was to break down and remove the restrictions on the power of the City Council contained, and perhaps wisely contained, in the charter of 1848, and to amplify, enlarge and add to the authority and powers of the city. Some of these amendments strike

us as being quite inconsistent with the idea of the limitation now insisted on.

In the opinion of this Court, the demurrer to the answer was properly sustained, and the judgment of the District Court is

Affirmed.