### PROCEEDINGS TO TEST THE ROSE COUNTY LOCAL OPTION LAW.

Common Pleas Court of Hancock County.

Jacob Gassman v. Arthur E. Kerns et al.

Decided, December, 1908.

*Constitutional Law—Rose County Local Option Law Valid—Parties Defendant—Injunction not the Proper Proceeding—Adequate Remedy at Law—Constitutional Liberties—Inviolability of Private Property—Delegation of Legislative Power—Uniform Operation—Approval by Other Authority than the General Assembly—99 O. L., 85.*

1. Private citizens who are members of an organization which has as its object the enforcement of the Rose county local option law are not, by reason of that fact, rendered proper defendants to an action to test the constitutionality of that law.

2. Injunction will not lie to prevent enforcement of this act, as an adequate remedy at law is afforded in a criminal prosecution under the act.

3. This act is not unconstitutional as a denial of constitutional liberty in making it possible to prohibit the liquor traffic within certain territory; or because the act violates the principle of the inviolability of private property; or because it is a general law without uniform operation; or in contravention of the principle that no act shall "take effect" upon the approval of any other authority than the General Assembly.

*George H. Phelps*, for plaintiff.

*W. B. Wheeler, W. L. David, Charles A. Blackford* and *A. G. Fuller*, contra.

DUNCAN, **J.**

Heard on demurrer to petition.

This suit is brought by the plaintiff, a retail dealer of intoxicating liquors in this county, seeking to test the constitutionality of what is known as the "Rose" county local option law whereby, on a majority vote of the electors of any county, the sale of intoxicating liquors therein as a beverage may be prohibited for the term of three years. The petition recites that one Arthur E. Kerns and one Theodore Bayless, the sole defendants herein, with others, styling themselves as "The Hancock County Local Option League," sought to avail themselves of the provisions of said law, and circulated petitions in pursuance of which an election was held in this county on the 16th day of November, 1908, resulting in a "dry" victory, and that under the provisions of said law, if it is constitutional, the plaintiff's said business will become unlawful on and after December 16, 1908. The petition further recites that the defendants and other members of said organization threaten and intend, and will unless restrained therefrom, attempt to force the plaintiff into obedience of said law, and cause him to be prosecuted if he does not submit.

The objections made to said law are as follows:

1. That it violates the constitutional liberties of the subject of government under both the Constitution of Ohio and the Constitution of the United States.

2. That it violates the principle of the inviolability of private property.

3. That it violates that provision of the Constitution of Ohio which delegates to the General Assembly all such legislative

power as is not by the terms of the Constitution reserved to the people.

4.　That it violates Par. 1 of Section 26, Article II, of the Constitution of Ohio requiring all laws of a general nature to have a uniform operation throughout the state.

5.　That it violates the concluding paragraph of said last named section, which provides that no act shall be passed or take effect upon the approval of any other authority than the General Assembly.

The prayer is that said law be declared unconstitutional and void, and that defendants and all others acting with them be enjoined from interfering with him in the orderly conduct of his said business.

The defendants file a demurrer to this petition which raises the question, whether the defendants Kerns and Bayless are proper parties defendant for the object sought, whether injunction is the proper remedy, and whether a cause of action otherwise is stated in the petition?

Are Kerns and Bayless proper parties defendants?　Kerns and Bayless are private citizens.　They are made defendants here in no official capacity in which a duty devolves upon them to enforce this or any other law.　Hence, they can represent no one but themselves, and any order made on them would bind no one else.　The fact that they belong to an organization whose object is the enforcement of this law, means nothing in a legal sense.　This organization does not represent the public, or any considerable part of it; so that, any decision of this case could bind no one but the parties to it.　This being so, the result would fall far short of determining plaintiff's right to continue his business in this county.　It follows, therefore, that said Kerns and Bayless are not proper defendants to this action, and being the only defendants, this action must fail for this, if for no other reason.

It is also to be observed that the wrong complained of is not confined to the plaintiff.　No right nor privilege peculiar to him is violated.　That wrongs inflicted and rights invaded, if any, affect the public on one side at least, and the question should be

raised in such way as that the public is represented and bound by the result.

Is injunction the proper remedy?

It has been decided many times that it is not. The principle has long since become elementary that a court of equity will not enjoin criminal proceedings (Bispham's Equity, 4th Ed., Section 412). This is upon the theory that there exists an adequate remedy at law. Where a court of law can do as full justice to the parties and to the matters in dispute as can be done in equity, a court of equity will not stay proceedings at law. The principle is well established, and is universal in its application, that when a cause belongs to the jurisdiction of the law courts, equity will never interfere to restrain the prosecution of the action (Pomeroy's Equity, Sections 1361 and 1361n). That is to say, it is time enough for plaintiff to test the law when he is actually attacked by the law. This is illustrated by a case decided by our own circuit court, *Arnold v. The Village of Van Wert et al*, reported in 3d C. C., 545, where it is held that:

"A court of equity will not interfere to restrain a municipal corporation, its mayor or marshal, from enforcing an ordinance prohibiting the sale of intoxicating liquors within the corporation, upon the ground of the illegality of such ordinance, until the right of the complainant is established at law."

This case was followed by Judge Dissette in *Cavenaugh v. The City of Cleveland et al*, 6th N. P., 423, where it is held:

"An injunction will not be granted to restrain the officers from enforcing the law on the mere theory that some one questions the validity of such law or ordinance."

See also *Schmidt v. Brennon et al*, 4th N. P.—N. S., 239.

Such decisions are not peculiar to Ohio. The principle is universal and decisions may be found in many of the states directly in line. In Missouri it is held that:

"An injunction against the enforcement of a statute requiring the inspection of beer can not be granted on the ground that the statute is unconstitutional, where the statute is enforceable only by criminal proceedings, since equity has no jurisdiction to enjoin criminal prosecutions."

"Setting up unconstitutionality of a statute in defense of a criminal information or indictment gives an adequate remedy at law against the statute, which will preclude the equitable relief, where it can be enforced only by such criminal proceedings." *State, ex rel Kenamore* v. *Wood*, 155 Mo., 425, (48 L. R. A., 596).

It is held in Georgia that:

"Courts of equity will not by injunction prevent the institution of prosecutions for criminal offenses, whether the same be violations of state statutes or municipal ordinances, nor will they, upon petition for an injunction of this nature, inquire into the constitutionality of a legislative act, or the validity or reasonableness of an ordinance making penal the act or acts for the doing of which prosecutions are threatened." *Paulk* v. *Mayor, etc.*, 104 Ga., 24 (41 L. R. A., 772).

See also the following authorities to the same effect: *Burnett* v. *Craig*, 30 Ala., 135 (68 Am. Dec., 115); *Crighto* v. *Dahmer*, 70 Miss., 602 (21 L. R. A., 84); *Chrisholm* v. *Adams*, 71 Tex., 678; *Porlis* v. *Fall*, 34 Ark., 375; *Suess* v. *Noble*, 31 Fed. Rep., 855; *Wallack* v. *The Society, etc.*, 67 N. Y., 23.

The court in this last case say:

"The unconstitutionality of the act of 1872 would be a perfect defense to a prosecution for the penalties given by it, and the question as to the constitutionality of the act has not been determined. It would, doubtless, be convenient for the plaintiff to have the judgment of the court upon the constitutionality of the act before subjecting himself to liability, for accumulated penalties. But this is not a ground for equitable interference, and to make it ground of jurisdiction in such cases would, in the general result, encourage, rather than restrain, litigation."

It is hardly necessary to say that this argument is strikingly applicable to the case at bar. See, also: *Poyer* v. *Des Plaines*, 123 Ill., 111; *St. Peter's Church* v. *Washington*, 109 N. C., 21; *New Home Sewing Machine Co.* v. *Fletcher*, 44 Ark., 139; *State* v. *O'Leary*, 155 Ind., 526 (52 L. R. A., 299), and other cases.

Is a cause of action stated in the petition, otherwise? This requires us to consider the constitutional objections made in the petition:

1.   That it violates the constitutional liberties of the subject of government.   This objection assumes that the traffic in intoxicating liquors is an inherent right of the citizen.   The great weight of authority is to the contrary.   In the case of *Crowley* v. *Christensen*, 132 U. S., 86, Justice Field, after dwelling upon the evils resulting from the sale of intoxicating liquors, says:

"It is a question of public expediency and public morality, and not of federal law.   The police power of the state is fully competent to regulate the business—to mitigate its evils or suppress it entirely.   There is no inherent right in a citizen to thus sell intoxicating liquors at retail; it is not a privilege of a citizen of the state or a citizen of the United States."

In the later cause of *Giozza* v. *Tiernan, Sheriff, etc.*, 148 U. S., 657, Chief Justice Fuller says:

"The privileges and immunities of citizens of the United States are privileges and immunities arising out of the nature and essential character of the national government, and granted and secured by the Constitution of the United States; and the right to sell intoxicating liquors is not one of the rights growing out of such citizenship."

See, also, *Bartemeyers* v. *Iowa*, 85 U. S., 129.

So, it is held by the Supreme Court of Kansas, *State of Kansas* v. *Durien*, 76 Kan., 1 (15 L. R. A., N. S., 908), that:

"The right to sell intoxicating liquors is not one of the privileges or immunities attaching to citizenship in the United States."

Judge McElvaine in *Benner* v. *Bauder*, 39 O. S., 399, having under discussion the "Scott" law, says in his opinion, at page 408:

"And further, without stopping to inquire into the inherent nature of legislative power, it is certainly safe to say that, in the absence of conventional limitations, the power would be ample for the making of laws absolutely prohibiting all traffic in intoxicating liquors.   To maintain this doctrine, it is not necessary to hold that the right to traffic generally in all subjects of trade is subject to legislative control.   It is enough to hold that a traffic which tends to evil, and that continually, is under the absolute power of the General Assembly."

Judge Minshall in his opinion, in *Adler* v. *Wilbeck*, 44 O. S., 539, at page 574, in discussing the "Dow" law, says:

"It is averred that, from a long time prior to the enactment of this law, the plaintiffs have been engaged in the traffic in intoxicating liquors, and have had a large amount of property invested in the business; and it is claimed that the law can not be made applicable to them without impairing their vested rights. The claim is not tenable. It would subvert the power to provide against the evils of the traffic, and place it superior to any regulation whatever. * * * No prescriptive right can be claimed by persons engaged in the whiskey traffic against the exercise of the functions by the Legislature of the state."

Judge Minshall then quotes with approval from the opinion of Chief Justice Taney in the license cases, 5th How. (46 U. S.), 577, as follows:

"If any state deems the retail and internal traffic in ardent spirits injurious to its citizens, and calculated to produce idleness, vice, or debauchery, I see nothing in the Constitution of the United States to prevent it from regulating and restraining the traffic, or from prohibiting it altogether, if it thinks proper," and so I hold that this objection is not well taken.

2. That it violates the principle of the inviolability of private property. This contention is disposed of in terms by the decision of our Supreme Court just referred to. On this point Judge Minshall further says:

"The provision of Section 9, Article XV (Section 18 of the schedule) of the Constitution has stood, since its adoption, as a perpetual admonition to all persons engaging in the traffic that, in doing so, they place their property, invested in the business, subject to the power of the General Assembly to provide against the evils resulting from the traffic. The same argument was made in *Miller* v. *State* against the act of 1854 prohibiting among other things, the sale of liquor to be drunk on the premises where sold; but it met with no favor in the court. The law was held valid. See opinion of Thurman, J., in the case 3 Ohio State, 484-7."

And it might be said that this same question was involved to a greater or less extent in every act of the Legislature for more than half a century, having in view the regulation or prohibition

of the traffic or the place where it was carried on, and that the holding has always sustained the exercise of the power. I call attention to a few of the cases: *Burkholter* v. *McConnellsville*, 20 O. S., 308; *Bronson* v. *Oberlin*, 41 O. S., 476; *Theis* v. *State*, 54 O. S., 245; *Gordon* v. *State*, 46 O. S., 607; *Stevens* v. *State*, 61 O. S., 597; *State, ex rel Lloyd,* v. *Dollison, Sheriff,* 68 O. S., 688 (affirming decision of lower court reported in 3 C. C.—N. S., 328); *Carey* v. *State*, 70 O. S., 121; and *Jeffrey, Mayor,* v. *Butler, ex rel, etc.,* 72 O. S., 647 (affirming decision of lower court reported in 4 C. C.—N. S., 494).

The conclusion is, therefore, that such legislation does not violate the inviolability of private property.

3. That it violates that provision of the Constitution which delegates to the General Assembly all such legislative power as is not by the terms of that instrument reserved to the people. This objection may be disposed of in connection with the fifth objection.

4. That it violates Par. 1 of Section 26, Article II, of the Constitution requiring all laws of a general nature to have a uniform operation throughout the state.

The act in question may be found in 99 O. L., 35. It provides that whenever thirty-five per cent. of the qualified electors of any county shall petition, etc., for an election to determine by ballot whether the sale of intoxicating liquors as a beverage shall be prohibited within the limits of such county, etc., a special election shall be held, and if a majority of the votes cast at such election is against the sale of intoxicating liquor as a beverage, then the selling, furnishing or giving away of intoxicating liquors as a beverage in said county from and after the expiration of thirty days from such election is prohibited and unlawful, punishable by fine and imprisonment. The act comprises eleven sections, the last one of which reads as follows:

"Sec. 11. This act shall take effect and be in force on and after September 1, 1908."

The act is general. It does not apply to one or more counties of the state, but to all. It is for the benefit of any county whose electors may wish to take advantage of it. It is like the me-

chanic's lien law, the contractor or material-man may take advantage of it if he has a case calling for it and so desires. The option which he has to proceed under it does not destroy its uniform operation. The same principle is seen in the provision of law which allows cities and villages and boards of education to exceed the regular tax limit by vote of the electors in such city, village or school district, or sets the law in motion which provides for the paving of a street upon petition of the abutting owners. The law is general, it is in effect, it is operative, but it is not automatic or self-executing. We have it and can take advantage of its provisions if we so desire, just like the other laws to which I have called attention. It is a privilege conferred upon all under the same terms and conditions. That the act is of a general nature and did not have uniform operation throughout the state, was one of the objections made to the "Beatty" township local option law, passed March 3, 1888 (85 O. L., 55), with provisions similar to the "Rose" law, with the exception that the township is the unit of territory in which the vote is had and sales made unlawful. Judge Dickman, in *Gordon* v. *The State,* 46 O. S., 607, at page 628, disposes of the objection as follows:

"The provisions of the act are bounded only by the limits of the state, and uniformity in its operation is not destroyed, because the electors in one or more townships may not see fit to avail themselves of its provisions. The act makes no discrimination between localities to the exclusion of any township. Every township in the state comes within the purview of the law, and may have the advantage of its provisions by complying with its terms. The operation of the statute is the same in all parts of the state, under the same circumstances and conditions.    *    *    *    We can not reach the conclusion that, because the electors of one township may decline to petition the trustees to order a special election to determine by ballot whether the sale of intoxicating liquors as a beverage shall be prohibited, every other township in the state shall be deprived of that privilege, on the ground that the act is not capable of a uniform operation."

This law was again upheld in *Stevens* v. *State,* 61 O. S., 597, and again by the United States Supreme Court, 179 U. S., 680.

The Beal local option law, passed April 3, 1902 (95 O. L., 87), was sustained in *State, ex rel Lloyd,* v. *Dollison, Sheriff,* 3 C. C.— N. S., 328, affirmed by the Ohio Supreme Court (68 O. S., 688), and by the United States Supreme Court (194 U. S., 121).

5. That it violates that provision of the Constitution which provides that no act shall be passed or take effect upon the approval of any other authority than the General Assembly. The point is made under this, and the fourth objection, that the power belongs exclusively to the General Assembly, and that prescribing an affirmative vote of the people as a condition precedent to its active operation, delegates to the people the right to say whether the law shall become effective. This also must be decided in the negative. The vote of the people is a method by which it is determined whether they wish to avail themselves of the provisions of the act. An individual may avail himself of the provisions of an act provided for individual benefit by mere action. But where the act is of such nature that any considerable number are interested and must act in concert, the petition or a vote is necessary to ascertain the majority will. The Legislature made the law and prescribed the contingency upon which it should operate. In this behalf Judge Ranney, in *Railroad Co.* v. *Commissioners,* 1 O. S., 77, at page 90, says:

"It is not the vote that makes, alters or even approves the law, but, as well remarked by one of counsel, it is the law that makes the vote and prescribes everything to be done consequent upon it. * * * These views lead to the conclusion that an enactment is not imperfect which makes its execution depend upon the contingent approval of persons designated in it, and that a county organization may be clothed with this discretion; and if the commissioners, the agents of the county, may exercise it, it seems too clear to be doubted that it may be conferred upon the body of those they represent."

This was another one of the objections made to the "Beatty" township local option law in *Gordon* v. *The State,* 46 O. S., 607. After citing a number of authorities from other states, Judge Dickman, speaking for the court at page 631, disposes of the question in this way:

"It is evident, we think, that the act whose constitutional validity is called in question, was a complete law when it had passed through the several stages of legislative enactment, and derived none of its validity from a vote of the people. In all its parts it is an expression of the will of the Legislature, and its execution is made dependent upon a condition prescribed by the legislative department of the state. By its terms, it was made to take effect from and after its passage. The qualified electors derive their authority to petition the trustees, and the trustees obtain their authority to order a special election, directly from the Legislature. The right of the electors to register their votes for or against the sale of intoxicating liquors, is conferred by the same body. If a majority of the votes cast at such election should be against the sale, the traffic in intoxicating liquors is thereby prohibited and made unlawful, by virtue of the act of the General Assembly, which may at once, if a change should come over the legislative will, repeal the law and avoid the result of the election. So far from the vote of the electors breathing life into the statute, it is only through the statute that the electors are entitled to vote at the special election. While they are free to cast their votes, the consequence of their aggregate vote is fixed and declared by the act of the Legislature. The penal sanction of the act is subject to no modification by the action of the electors, and it is an elementary principle that, 'the main strength and force of a law consists in the penalty annexed to it. Herein is to be found the principal obligation of human laws.' 1 Black., Com., 57.

"In some of the authorities which we have examined, the idea is prominent, that when the voters are called on to express by their ballots their opinion as to the subject-matter of the law, they declare no consequence, prescribe no penalties, and exercise no legislative functions. The consequence, it is said, are declared in the law, and are exclusively the result of the legislative will."

See, also, *Peck* v. *Weddell,* 17 O. S., 271, to the same effect.

It may be said in conclusion that the "Beatty" township local option law, the "Beal" municipal local option law, and the "Brannock" and "Jones" residential local option laws, are all subject to the same constitutional attacks as are made upon this "Rose" county local option law, and that they have all stood the constitutional test of the highest court in the state. If the "Rose" law is unconstitutional for any of the reasons urged, every one of the other local option laws is also unconstitu-

tional, but in face of the growing sentiment in this state against the saloon, I hardly think that the Supreme Court will overrule a long line of well considered decisions covering a period of fifty years and more up to the present day, in order to afford the plaintiff the relief which he seeks.

Holding the views which I have expressed, the demurrer to the petition and amendment thereto is sustained, and the temporary order of injunction heretofore granted herein is dissolved.