## ATTORNEY GENERAL *vs.* TUDOR ICE COMPANY.

This court has no jurisdiction in equity of an information by the attorney general against a private trading corporation, whose proceedings are not shown to have injured or endangered any public or private rights, and are objected to solely on the ground that they are not authorized by the act of incorporation and are therefore against public policy.

INFORMATION in equity by the attorney general, on behalf of the Commonwealth, and at the relation of Richard Price, to restrain the defendants from engaging in or carrying on any business other than the cutting, storing and selling of ice. Hearing, on a motion for an injunction, before the chief justice, who reported the case as follows:

" The company was organized in 1861, under the Gen. Sts. c. 61, for the purpose of cutting, storing and selling ice. Its

capital stock was fixed at $360,000. It has carried on this busi-
ness ever since, but has also carried on various other branches
of business; has been in the habit of chartering vessels for the
East Indies, loading them with ice so far as was proper, and
completing the cargo by purchasing and exporting kerosene oil
tobacco, rosin and lumber; and has also imported merchandise
of various kinds, including paddy, jute, linseed and tea. It has
also erected buildings, and placed machinery in them, which cost
about $400,000. Some of the machinery is for the manufacture
of tobacco, but the manufacture was discontinued about two
years ago. Some of it is for cleaning rice, some for the manu-
facture of jute into gunny cloth, and some for the manufacture
of linseed into oil. These branches of business it still carries
on, and the capital invested in them is three or four times larger
than its capital stock. The business is connected with the ex-
portation of ice, and has increased the profits of the company,
but does not appear to be necessary to its legitimate business.
It has imported two cargoes of tea, worth $300,000, which had
no connection with the ice trade. It does not appear that any
of the creditors of the company are in danger of losing by it, and
there is no objection to its proceedings, except that they are not
authorized by its act of incorporation and are alleged to be
against public policy for that reason. I report the case for de-
termination upon the questions, whether this information in
equity can be maintained, and, if it can be maintained, whether
a temporary injunction ought to be issued, upon the facts above
stated."

*S. Bartlett*, for the Attorney General.

*C. B. Goodrich & H. W. Paine*, for the defendants.

GRAY, J. This court, sitting in equity, does not administer
punishment or enforce forfeitures for transgressions of law; but
its jurisdiction is limited to the protection of civil rights, and to
cases in which full and adequate relief cannot be had on the
common law side of this court or of the other courts of the
Commonwealth.

The Tudor Ice Company is a private trading corporation. It
is not in any sense a trustee for public purposes. This is not a

suit by a stockholder or a creditor. The acts complained of are not shown to have injured or endangered any rights of the public, or of any individual or other corporation ; and cannot, upon any legal construction, be held to constitute a nuisance. It is expressly stated, in the report of the chief justice, that " it does not appear that any of the creditors of the company are in danger of losing by it, and there is no objection to its proceedings, except that they are not authorized by its act of incorporation and are alleged to be against public policy for that reason." No case is therefore made, upon which, according to the principles of equity jurisprudence and the practice of this court, an injunction should be issued upon an information in chancery.

In *Attorney General* v. *Utica Insurance Co.* 2 Johns. Ch. 371 Chancellor Kent, in a very able and elaborate judgment, after a thorough discussion of the question on principle, and an extensive examination of the earlier authorities, held that such an information could not be maintained to restrain an insurance company from exercising banking powers in violation of a statute of New York; but that the proper remedy was at law, by information in the nature of a *quo warranto;* and no appeal appears to have been taken from his decree. An information in the nature of a *quo warranto* was thereupon filed, and sustained by the supreme court of New York, and judgment rendered thereon that the corporation be ousted from the franchise which it had usurped. *People* v. *Utica Insurance Co.* 15 Johns. 358. Similar proceedings may be had at law in this Commonwealth in a proper case. *Goddard* v. *Smithett,* 3 Gray, 116, 122, 123. *Attorney General* v. *Salem,* 103 Mass. 138. *Boston & Providence Railroad Co.* v. *Midland Railroad Co.* 1 Gray, 340. Gen. Sts. *c.* 145, §§ 16–24.

One early English case of high authority, not cited by Chancellor Kent, nor at the argument of the present case, is so much in point as to be worth quoting in full. Upon a bill in equity, filed by the attorney general, at the relation of several freemen of the Weavers' Company, against the officers of that company, setting forth " that the defendants had been guilty of many breaches and violations of their charters, and had op-

pressed the freemen, &c., and mentioned some particulars; and for a discovery of the rest, and that they might be decreed for the future to observe the charters, and to have an account of the revenue of the corporation which the defendants had misspent, &c., was the end of the bill. To which the defendants demurred, because, as to part of the bill, it was to subject them to prosecutions at law, and to a *quo warranto;* and as to the other parts, the plaintiffs had remedy by *mandamus,* information, or otherwise, and not here. And of the same opinion," the report proceeds, was Lord Cowper, "who said it would usurp too much on the king's bench; and that he never heard of any precedent for such a case as this; and so allowed the demurrer." *Attorney General* v. *Reynolds,* 1 Eq. Cas. Ab. (3d ed.) 131.

The modern English cases, cited in support of this information, were of suits against public bodies or officers exceeding the powers conferred upon them by law, or against corporations vested with the power of eminent domain and doing acts which were deemed inconsistent with rights of the public.

Some of them were cases of misapplication of funds raised by taxation and held by municipal corporations or officers upon specific public trusts. Such were *Attorney General* v. *Norwich,* 16 Sim. 225, *Attorney General* v. *Guardians of Poor of Southampton,* 17 Sim. 6, and *Attorney General* v. *Andrews,* 2 Macn. & Gord. 225.

The hypothetical case, in which Lord Westbury, in *Stockport District Waterworks* v. *Manchester,* 9 Jur. (N. S.) 266, said that he should "probably not hesitate" to act upon the information of the attorney general, was of a suit to restrain the making of a contract between an aqueduct corporation and a city to carry water beyond the limits which the city was authorized by law to supply.

The passages cited from *Liverpool* v. *Chorley Water Works Co.* 2 De Gex, Macn. & Gord. 852, 860, and *Ware* v. *Regent's Canal Co.* 3 De Gex & Jones, 212, 228, were but *dicta* that an unauthorized diversion of water or flowing of land by an aqueduct or canal corporation, without proof of actual or imminent injury to property, gave no right of suit to an individual, and

could only be checked on an application to the court by the attorney general.

The case of *Attorney General* v. *Great Northern Railway Co.* 4 De Gex & Smale, 75, was a clear case of nuisance, the unlawful obstruction of a public highway by a railroad. That of *Attorney General* v. *Oxford, Worcester & Wolverhampton Railway Co.* 2 Weekly Rep. 330, was the case of the opening of a railway line in violation of an order which an authorized public board had made upon the ground that it would be unsafe to the public.

The single case, in which an information has been sustained in an English court of chancery against a corporation for carrying on a business beyond its corporate powers, is *Attorney General* v. *Great Northern Railway Co.* 1 Drewry & Smale, 154, in which Vice Chancellor Kindersley in 1860 restrained a railway company from trading in coal in large quantities, upon the ground that there was danger that, if allowed to go on, it might get into its hands the coal trade of the whole district from or through which its railway ran, and thus acquire a monopoly injurious to the public. That case is evidently the foundation of the *dictum* of Vice Chancellor Wood, two years later, in *Hare* v. *London & Northwestern Railway Co.* 2 Johns. & Hem. 80, 111.

In *Attorney General* v. *Mid Kent Railway Co.* Law Rep. 3 Ch. 100, a mandatory injunction was granted upon the information of the attorney general to compel a railway company to construct a bridge over a public road, and with as gradual a slope as was required by a special clause in its charter; and the objection that the attorney general might have had an equal and complete remedy at law was stated by each of the lords justices as if it required no answer and afforded no ground for refusing to entertain jurisdiction in equity. It is often said, in the English books, that the king or his attorney general, suing in behalf of the public, has the election to sue in either of his courts, and may therefore enforce a legal right in the court of chancery. 1 Dan. Ch. Pract. (3d Am. ed.) 6, 7. *Attorney General* v. *Galway*, 1 Molloy, 95, 103. However that may be, by

our statutes the general equity jurisdiction of this court is limited to cases where there is no plain, adequate and complete remedy at law, as well in suits by the Commonwealth as in those brought by private persons. Gen. Sts. *c*. 113, § 2. *Commonwealth* v. *Smith*, 10 Allen, 448. *Clouston* v. *Shearer*, 99 Mass. 209, 211, and other cases there cited. The 38th of the former rules in chancery of this court (14 Gray, 360) by which the court adopted, as the outlines of its practice, the practice of the high court of chancery in England, so far as the same was not repugnant to the Constitution and laws of the Commonwealth, nor to those or such other rules as the court might from time to time make, cannot enlarge the jurisdiction of this court as defined by statute, and has been repealed by the new rules recently established. Rules of 1870, *post*, 555.

The only cases in which informations in equity in the name of the attorney general have been sustained by this court are of two classes. The one is of public nuisances, which affect or endanger the public safety or convenience, and require immediate judicial interposition, like obstructions of highways or navigable waters. *District Attorney* v. *Lynn & Boston Railroad Co.* 16 Gray, 242. *Attorney General* v. *Cambridge*, Ib. 247. *Attorney General* v. *Boston Wharf Co.* 12 Gray, 553. *Rowe* v. *Granite Bridge Co.* 21 Pick. 344, 347. The other is of trusts for charitable purposes, where the beneficiaries are so numerous and indefinite that the breach of trust cannot be effectively redressed except by suit in behalf of the public. *County Attorney* v. *May*, 5 Cush. 336. *Jackson* v. *Phillips*, 14 Allen, 539, 579. *Attorney General* v. *Garrison*, 101 Mass. 223. Gen. Sts. *c*. 14, § 20. If there are any other cases to which this form of remedy is appropriate, that of a private trading corporation, whose proceedings are not shown to have injured or endangered any public or private rights, and are objected to solely upon the ground that they are not authorized by its act of incorporation and are therefore against public policy, is not one of them.                    *Information dismissed.*