## THE STATE v. O'LEARY ET AL.

[No. 19,005.   Filed November 27, 1900.]

INJUNCTION.—*Gaming.*—*Criminal Law.*—An injunction will not be granted at the instance of the State to suppress a gambling house, where the gambling house was located out upon a prairie almost a quarter of a mile distant from any house, and it was not shown that any person had been annoyed or disturbed, or any property injured.

From the Porter Circuit Court.   *Affirmed.*

*W. L. Taylor,* Attorney-General, *Merrill Moores, S. T. Sutton, J. W. Youche* and *O. J. Bruce,* for State.

*J. B. Peterson, S. N. Chambers, S. O. Pickens* and *C. W. Moores,* for appellees.

DOWLING, C. J.—This was an application on behalf of the State for a restraining order forbidding the defendants from keeping and maintaining a gambling house in the town of Roby, in Lake county, Indiana.   To render the injunction effectual, the appointment of a receiver, to take possession of the room and building where the gambling was alleged to be carried on, was asked for.   Prayer for a permanent injunction on the final hearing of the cause.

The proceeding was by information filed in the Lake Circuit Court, by the Attorney-General and the prosecuting attorney of that county, which was duly verified.

The information charges, in substance, that all of the defendants, except Annie O'Leary, are, and since September 1, 1898, have been, unlawfully engaged in the business of selling pools, and keeping a room in which to sell pools, and in recording and registering bets and wagers upon the results of trials of skill, speed, and power of endurance of man and beasts in a certain room and building in Lake county, and State of Indiana, owned by the defendant, Annie O'Leary, but the real ownership of which is believed by plaintiff to be in James O'Leary; that the defendants on every day since September 1, 1898, up to and at the time of

State v. O'Leary.

the filing of the information, unlawfully kept in said county and State a certain room and building, afterwards in said information particularly described, with apparatus, blackboards, blanks, papers, and other devices for the purpose of recording and registering bets and wagers upon the results of trials and contests of skill, speed, and power of endurance of man and beasts, and that unlawfully upon each of said days said defendants have recorded and registered bets and wagers, and sold pools upon the results of such trials and contests, said defendants upon each and all of said days being either the owners, lessees, or occupants of said room and building, and then and there unlawfully and knowingly permitted said room to be occupied, and did then and there unlawfully keep and exhibit apparatus, blackboard, blanks, papers, and divers other devices, for the purpose of recording and registering bets and wagers upon trials and contests of skill, etc.; all in violation of the criminal law of the State of Indiana.  That said pool room and business was widely advertised by the defendants in papers having a large circulation among gamblers and sporting men throughout the State of Indiana, and other states; that the defendants, in order to bring a large number of gamblers from neighboring towns and cities to said pool room, ran, and did cause to be run, special trains from Chicago, and that they are now upon each and every day bringing together upon the premises aforesaid great crowds of persons ranging from 300 to 800, and will, unless enjoined and restrained from so doing, continue running said special trains and bringing together and causing to congregate in said room and said building said gamblers from said cities and towns; that on September 23, 1898, affidavits and informations were filed against said defendants charging them with the crime of pool selling, and that warrants were issued for the arrest of said defendants and were placed in the hands of the sheriff of Lake county to be served; that, notwithstanding the defendants were all in said room and building, the sheriff was

unable to secure the arrest of more than three of them, for the reasons that the defendants at the time had assumed fictitious names, and denied that they were the persons named in the warrants; that the defendants are all residents of foreign states, but follow pool selling and gambling in various towns and cities, and, when driven from one place, always assume another and different name; that the gamblers who constitute the crowds which are brought together at Roby from this and other states are the friends of the defendants, and conspire and confederate with them in avoiding the process of the court and in avoiding arrests upon warrants in the hands of the sheriff, thereby rendering the arrest of the defendants by the sheriff and other peace officers impossible. ·

That for the purpose of preventing prosecutions against them and deterring witnesses from giving evidence, whenever prosecutions are threatened or begun, the defendants circulate and publish reports that such proceedings are taken with a view of extorting blackmail from them; that the defendants claim to have organized a club, and are insisting upon the right to gather together gamblers and vicious persons, and to bring them in train loads to the said room and building to violate the criminal laws of Indiana, and to prevent persons coming into the room and building from furnishing testimony or identifying the persons for whom warrants are issued upon indictments and affidavits, and that the defendants have excluded, and claimed the right to exclude, from said room and building others than the sheriff and his deputies; that the defendants come on the same special trains with crowds of gamblers, criminals, and immoral persons to the said room and building, and leave on the same trains, so that the sheriff has no opportunity to make arrests except while the defendants are either in said room or with said crowds; that said room has never been used for any other purpose than for pool selling and other forms of gambling; that the room and building are provided

State v. O'Leary.

with doors and other devices to prevent peace officers from entering, and that the defendants have placed at the doors men as guards to prevent any person from entering who might in any manner interfere with the violation of the criminal laws of the State, or who might truthfully testify against the violations of the laws; and that the room is so fortified that only the so-called members of the club, who are gamblers and criminals, are permitted to enter; that the room and building, and the real estate upon which the building is located, are in that part of the city of Hammond known as Roby, being the place indicated by the publications and score cards; that Hammond has a population of from 10,000 to 15,000 inhabitants, with a city government, mayor, and a large number of policemen, and that within a half mile of the room, and on the same public street, are two school buildings in which public school is being held; that within one-half mile of the room and building is located the town of Whiting, with a population of nearly 3,500 inhabitants, and near by is situated the city of East Chicago, with about the same population; that the defendants have continued daily to bring upon the said premises and into the said room, for the purposes aforesaid, large crowds of gamblers, and have each day continued in the same open and public manner, persistently, repeatedly, continuously, and intentionally to violate the laws of Indiana in defiance of the officers and inhabitants of the city of Hammond, the town of Whiting, the city of East Chicago, and the officers and citizens of Lake county, and are now asserting their intention so to continue such unlawful acts in defiance of such officers and inhabitants, and that they will do so unless enjoined; that because of such unlawful acts of the defendants, the citizens of the towns and cities, before named, in Lake county, have been essentially interfered with in the comfortable enjoyment of their lives and property, and that their general moral welfare is greatly injured, and the name

and good repute of the citizens of Lake county is and will be greatly injured; that it is the purpose and design of the defendants permanently to establish gambling and pool selling in said building, and to continue to bring large crowds of gamblers, criminals, and immoral people into Lake county, in defiance of its citizens, officers, and the laws of Indiana, and that the defendants purpose to avoid arrests and prosecutions by the means aforesaid.

It is further charged that the room and building so used are entered from another building near by, so that it is necessary, in order effectually to enjoin and prohibit the doing of the things alleged in said room, and to prevent others from entering and using said building, to appoint a receiver with authority to take possession of the said room and building; that there is no adequate or effective remedy at law for the redress of the grievances set forth, and that said acts have become a public nuisance, and will continue to be and grow still more obnoxious unless the same be enjoined.

On the motion of the appellees, a change of venue was granted, the cause was sent to the Porter Circuit Court, and Hon. Robert Lowry was appointed a special judge to try it. All of the defendants appeared, and filed an answer in denial. The cause having been submitted for trial, and the evidence heard, a general finding was made for the defendants. The appellant filed motions, in various forms, for judgment in its favor, all of which were overruled, and there was judgment for the appellees on the finding. The appellant moved to modify the judgment, and also filed a motion for a new trial, both of which motions were overruled. The errors assigned and discussed embrace these rulings.

The sufficiency of the information is not challenged, and the question to be determined on this appeal arises upon the proof alone. The evidence fully sustained the charges of the information as to the nature of the resort, the unlawful

State *v.* O'Leary.

practices carried on therein, the number and disreputable character of the patrons of the establishment, and the "open, repeated, persistent, and intentional violation of the statutes" against gambling by the appellees and others, at the place, and in the manner set forth in the information.

There was no proof that any person had been annoyed or disturbed by reason of the maintenance of the gambling house, or that any property rights of the State, were likely to be, in any manner, injuriously affected. The gambling house was remote from any other building, and was situated upon the open and uninhabited plain or prairie. The premises described were within the corporate limits of the town of Roby, and had been so located and operated for a considerable period of time. It was not shown that any of the inhabitants of Lake county, in any way, or under any circumstances, came in contact with the persons who frequented the gambling house. Nothing prevented the enforcement of the ordinances of the town, and the statutes of the State against gambling and the maintenance of gambling houses, excepting the indifference or sympathy of the community, or the indolence or faithlessness of the public officers of the town and county charged with that duty.

The question, therefore, for decision is whether an injunction may be had on the application of the State to suppress a gambling house, where no injury to property is shown; where no person has been annoyed or disturbed; where gambling in all of its forms is made a criminal offense by statute, and the ordinary criminal process for its punishment and suppression is in full force and available to the State.

While it is probably true that every indictable nuisance may, under particular circumstances, be enjoined, it cannot be said that a court of equity is bound, in every case, to award the extraordinary remedy of injunction upon the naked proof of the existence of such a nuisance. The circumstance that the acts constituting the nuisance are crimes

or misdemeanors, and punishable as such, is not of itself a sufficient reason for refusing the writ. *Columbia Athletic Club* v. *State,* 143 Ind. 98, 28 L. R. A. 727; *State* v. *Crawford,* 28 Kan. 726; *State* v. *Saunders,* 66 N. H. 39, 25 Atl. 588, 18 L. R. A. 646; *In re Debs,* 158 U. S. 564, 15 Sup. Ct. 900, 39 L. ed. 1092; *Littleton* v. *Fritz,* 65 Iowa 488; *Port of Mobile* v. *Louisville R. Co.,* 84 Ala. 115, 4 South. 106.

Unless it appears, not only that a public nuisance exists, but that the public is subjected to actual annoyance or injury by it, the courts generally refuse to interfere by injunction, at least before indictment and a trial and conviction at law. Another element is usually found in the cases where an injunction has been granted to suppress an indictable nuisance, and that is the existence of some circumstances which seemed to render the immediate interference of the court necessary to prevent a real injury to the public, —proof of an exigency which the ordinary process of the court was not adequate to meet generally being required. In the present case, every unlawful act charged in the information as constituting the nuisance complained of is a crime or a misdemeanor, and is subject to indictment and punishment under the criminal code. The premises where the gambling is alleged to be carried on are not in a populous neighborhood, but out upon a prairie, the nearest house being nearly a quarter of a mile distant. The place has not been recently established, so that time was not afforded within which to present the offenders before the grand jury, but its existence has been of long standing and notorious. So far as the record discloses, no private person has made complaint of any injury sustained, or likely to be sustained, by himself or his property. Under these circumstances, we can see no legal reason why resort should not be had to criminal proceedings to punish and suppress acts, every one of which is expressly forbidden by the code as a crime or a misdemeanor, instead of casting the burden of

the abatement of these unlawful practices upon the civil side of the court. A civil suit by information, in the name of the State, filed by the Attorney-General and the local prosecuting attorney, is but an indirect method of accomplishing an end which could more properly and more satisfactorily be attained by indictment. The apathy or sympathy of the local community and the negligence of the public officers, which prevent a criminal prosecution, or render its result doubtful, cannot be regarded as a reason why a civil action should be substituted for a criminal proceeding, and why the alleged violation of the criminal law should be tried and determined by a judge instead of a jury. *Maines* v. *State,* 42 Ind. 327; *State* v. *Houk,* 73 Ind. 37; 2 Bish. Crim. Proc., §813; *People* v. *Equity Gas Light Co.,* 141 N. Y. 232, 36 N. E. 194; *Attorney-General* v. *Tudor Ice Co.,* 104 Mass. 239; *State* v. *Patterson,* 14 Tex. Civ. App. 465, 37 S. W. 478.

Injunctions have been granted at the instance of the Attorney-General of the State to prevent the destruction of a bridge upon a public highway. *Attorney-General* v. *Forbes,* 2 Myl. & Cr. 123.

To prevent the deposit of filth and noxious refuse matter upon a private vacant lot in the city of London. *Attorney-General* v. *Heatley,* L. R. 1 Ch. Div. (1897) p. 560.

To prevent obstructions to the freedom of interstate commerce. *In re Debs,* 158 U. S. 564, 15 Sup. Ct. 900, 39 L. ed. 1092.

To prevent nuisances upon public highways. *Green* v. *Oakes,* 17 Ill. 249; *Craig* v. *People,* 47 Ill. 487.

To prevent the obstruction of rivers, harbors, or other navigable waters. *People* v. *Vanderbuilt,* 28 N. Y. 396; *Davis* v. *Mayor, etc.,* 4 Kern. 506, 526.

To prevent the pollution of streams. *Attorney-General* v. *Cockermouth Local Board,* L. R. 18 Eq. 172.

To restrain a corporation from exercising a franchise not granted to it by law. *People* v. *Third Ave. R. Co.,* 45 Barb. 63.

On the other hand, there are many cases where a violation of law occurred with injury either to the public or to private individuals in which relief by injunction was denied.

It is said in High on Injunctions, §23: "The subject-matter of the jurisdiction of equity being the protection of private property and of civil rights, courts of equity will not interfere for the punishment or prevention of mere criminal or immoral acts, unconnected with violations of private rights. Equity has no jurisdiction to restrain the commission of crimes, or to enforce moral obligations, and the performance of moral duties, nor will it interfere for the prevention of an illegal act merely because it is illegal. And, in the absence of any injury to property rights, it will not lend its aid by injunction to restrain the violation of public or penal statutes, or the commission of immoral and illegal acts. Thus, the relief has been refused to prevent persons from carrying on the business of banking in violation of a statute restraining unincorporated banking associations. So, where it was sought to enjoin defendants from running their street cars on Sunday, in violation of a statute making it a penal offense, the relief was refused, although the action was brought by pewholders and property owners on the line of defendants' track. In all such cases, ample remedy may be had by proceedings at law, and the offense being *damnum absque injuria,* courts of equity will not interfere. And, in accordance with the well-settled doctrine that equity will not interfere with the administration of the criminal laws of the State, an injunction will not be granted against the enforcement of executions for costs issued against an unsuccessful party to a criminal prosecution. Nor will a court of equity enjoin a judgment imposed for violating a law of the State. Nor will it enjoin suits of a criminal nature." See, also, Wood on Nuisances (2nd ed.) §788; *Hamilton-Brown Shoe Co.* v. *Saxey,* 131 Mo. 212, 32 S. W. 1106; *State* v. *Patterson,* 14 Tex. Civ. App. 465, 37 S. W. 478; *Attorney-General* v. *Tudor Ice Co.,* 104 Mass. 239; *State, ex rel.,* v. *Uhrig,* 14 Mo. App. 413.

It may be stated that where the injury is *pressing* or *imminent,* so that the public safety is menaced, or. public rights are obstructed or interfered with, and the special circumstances are such that the ordinary process of the courts is not sufficiently prompt or effective to prevent such injury or obstruction, the remedy by injunction may be applied, provided the right is clear and the wrong has not been acquiesced in by the plaintiff. The important inquiry in each case is whether, under the circumstances of the particular instance, there is a *necessity* for the exercise of that jurisdiction. The evidence in the case before us entirely fails to establish the existence of such a necessity at this time. We do not undertake to lay down any general rule, or to decide that a place where gambling is carried on, and where lawless and disreputable persons congregate for the purpose of gaming, may not, under special circumstances, constitute a public nuisance, and be a proper subject for the exercise of the powers of a court of equity. But, owing to the total failure of proof in the important particulars pointed out in this opinion, we are constrained to hold that the appellant failed to make such a case as warranted the interposition of the court by its extraordinary writ of injunction.  *Crighto* v. *Dahmer,* 70 Miss. 602, 13 South. 237, 21 L. R. A. 84, 35 Am. St. 666, and notes; *Goodrich* v. *Moore,* 2 Minn. 61, 72 Am. Dec. 74, 16 Am. & Eng. Ency. of Law(1st ed.), 927.

Judgment affirmed.