J. H. CAMPBELL, Appellant, v. JACKMAN BROTHERS, Appellees.

**Intoxicating Liquors:** MULCT LAW: INJUNCTION. The so-called mulct law operates as a modification of the original prohibitory statutes, to the extent that a liquor dealer who has complied with all the conditions thereof cannot be enjoined from the operation of his business on the ground that it is a nuisance, as was formerly the case.

**Same:** CONSTRUCTION OF STATUTES: EXCEPTIONS. An express exception in a general statute has the effect to exclude from the operation of the statute matters' which would otherwise be included, and courts are required to give it effect though it may render the principal clause meaningless.

**Sale of Liquor:** NUISANCE: CONSTITUTIONAL LAW. The sale of liquor
3 is not a nuisance *per se* and the mulct law permitting the sale as
a beverage, when its conditions are complied with, is not invalid
as an implied violation of the constitution, or of the general wel-
fare clause of the federal constitution, on the theory that the traffic
is demoralizing and destructive of public morals, health and safety.

**Equity Jurisdiction:** INJUNCTION. The function of courts of equity
4 is the protection of private property and civil rights, except when
enlarged by statute, and they will not interfere by injunction to
prevent or punish criminal or immoral acts unconnected with the
violation of a private right; nor will they enforce moral obligations
or duties.

**Sale of Liquor:** LEGISLATIVE REGULATION. The mulct law permitting
5 and regulating the sale of intoxicating liquor upon certain con-
ditions is a proper exercise of legislative power.

**Constitutional Law:** STATUTES. Courts will not declare a statute
6 void merely because in their judgment it violates the spirit of
the constitution, but there must be a violation of a specific pro-
vision expressed, or clearly implied from what is expressed.

*Appeal from Blackhawk District Court.*—HON. FRANKLIN
C. PLATT, Judge.

TUESDAY, DECEMBER 15, 1908.

THE opinion states the case.—*Affirmed.*

*Dunshee & Dorn,* for appellant.

*W. N. Birdsall, J. E. Williams, Boies & Law,* and
*Carr, Hewitt, Parker & Wright,* for appellees.

WEAVER, J.—This action was begun in equity to en-
join an alleged liquor nuisance in the city of Waterloo,
Iowa. The defendants appeared thereto and answered
admitting the use by them of the described premises as a
place of business for the keeping and sale of intoxicating
liquors, but pleading a state of facts showing their full

compliance with all of the terms, restrictions and requirements of the mulct tax law.   Code, sections 2432-2455, inclusive.   To this answer · the plaintiff demurred on grounds stated as follows:

First.   The sale of intoxicating liquors at retail to be drunk as a beverage on the premises is destructive of the public safety, tends to idleness and the promotion of evil manners, and is therefore inherently immoral and unlawful and contrary to the first great principles of the social compact which lies at the foundation of every civilized government, and can not be licensed under the Constitution of the State of Iowa or the Constitution of the United States.   Second.   The maintenance of a place for the sale of intoxicating liquors to be drunk as a beverage on the premises is destructive of the public morals, the public health, the public safety, tends to idleness and the promotion of evil manners, and is therefore inherently immoral and unlawful and contrary to the first great principles of the social compact. which lies at the foundation of every civilized government, and can not be licensed under the Constitution of the State of Iowa or the Constitution of the United States.   Third.   The sale of intoxicating liquors to · be used as a beverage is under the laws of this state a public offense, and section 2448 of the Code, which is pleaded as a bar to the maintenance of this action, is in violation of the fundamental compact and the Constitution of Iowa, and is therefore void. Fourth.   Every place which is kept or maintained in this State for the sale of intoxicating liquor to be used as a beverage is made by law a public nuisance, and it is not competent for the Legislature to license a public nuisance, and section 2448 of the Code is in violation of the fundamental compact and the Constitution of Iowa, and is therefore void.   Fifth.   Section 2448 of the Code, which is pleaded as a defense, is unconstitutional and void as being in conflict with the spirit and purpose of the Constitution of the State.   Sixth.   Section 2448 of the Code is unconstitutional and void, in that it is an attempt on the part of the legislative department of the State to barter away the health, morals and welfare of the people for a pecuniary consideration, and therefore fun-

damentally inconsistent with the very purpose and end of all government. Seventh. Section 2448 of the Code, pleaded as a defense, is void and unconstitutional, in that it is an attempt of the legislative department of the government to invade the fundamental rights of individual citizens by legalizing public nuisances to the serious injury of private property. Eighth. Section 2448 of the Code is void and unconstitutional, in that it is calculated to prevent plaintiff in this action, an interested citizen of Blackhawk county, and the courts of said county, from restraining a public nuisance by injunction. Ninth. Section 2448 of the Code is null and void and unconstitutional, for the reason that it is an attempt of the Legislature to grant an indulgence for the future violation of the criminal laws of the State for a money consideration, and the Legislature has no power either inherent or specifically granted by the Constitution to make such a provision. Tenth. That it is a necessary implication from the words of the Constitution declaring the objects of government that the Legislature has no power for a money consideration to make legal provision whereby the criminal laws of the State may be violated in the future without penalty or punishment therefor.

The court having overruled the demurrer, the plaintiff elected to stand thereon, and, judgment being entered against him for costs, he brings the case to this court by appeal. Without attempting to discuss *seriatim* all of the propositions and points advanced by counsel, we proceed to those which are manifestly of controlling importance.

I. It is said that, notwithstanding the mulct law and amendments thereto, the business of keeping and selling intoxicants in this State is still prohibited by statute

1. INTOXICATING LIQUORS: mulct law: injunction.

(Code, sections 2382-2384), and the remedy by injunction will therefore lie under Code, section 2405. These sections do provide a sweeping general prohibition of the liquor traffic, declare it a nuisance, and provide for its injunction at the suit of any citizen of the county. This

law, it is contended, still stands unrepealed, because the later act not only does not in terms repeal the prohibition contained in the prior statute, but expressly disclaims such purpose. The language of the later statute, commonly known as the "mulct law," so far as it bears upon this particular question, provides that "nothing contained in this chapter so far as it relates to the mulct tax shall in any way be construed to mean that the business of the sale of intoxicating liquors is in any way legalized, nor as a license, nor shall the assessment and payment of any tax for the sale of liquors as aforesaid protect the wrong-doer from any penalty now provided by law except as the same is provided in the next section." Code, section 2447. The next section recites the various conditions and requirements necessary to be observed before the mulct law shall be held to operate as a defense to liquor prosecutions, and provides that, where all these conditions and requirements are observed, "no proceeding shall be maintained against any person who has paid the last quarterly assessment of the mulct tax nor against any premises as a nuisance on account of the selling or keeping for sale therein or thereon by such persons of such liquors." Reading only the legislative disclaimer of any intent to legalize or license the traffic which we have quoted from section 2447, the contention by counsel could well be upheld; but the saving clause with which that section closes, "except as same is provided in the next section," indicates that its true meaning and effect can be determined only by reading the two sections together. Pursuing this method, we find that the statutory protestation against construing these terms into a license or legalization of the business is by express enactment so far waived as to exempt the dealer from any of the penalties of the law and make his place of business immune against injunction as a public nuisance in all cases where the provisions of the mulct tax

act have been complied with. In other words, while saying by way of preface that it proposes neither to legalize or license the business, it adds an exception by which it does both, to such an extent at least that so long as the liquor dealer shall observe the specified conditions he is relieved from punishment and his property is relieved from condemnation as a nuisance. / That such is the effect of the law this court has already decided, and we still see no way of escaping the conclusion. *State v. Van Vliet,* 92 Iowa, 476; *McKeever v. Beacom,* 101 Iowa, 173; *Phillips v. Gifford,* 104 Iowa, 458; *Iowa City v. McInerny,* 114 Iowa, 586.

The effect of any sweeping, general statutory provision which is followed by or coupled with an express exception naturally and necessarily depends upon the nature and extent of the exception, and, if this be of

2. SAME: construction of statutes: exceptions.

such character as to emasculate the principal clause or render any of its terms meaningless, the courts are nevertheless required to give effect to such exception, whatever they may think of the candor or want of candor which controlled the phraseology of the law. Shakespeare has said there is "much virtue in 'If,'" and, had that great man lived to witness the course of prohibitory legislation in Iowa, he would doubtless accord equal potency to "except." The office of an exception in the statute is, generally speaking, to take or exclude from the operation of the statute certain things or subjects which would otherwise be included therein (see Bouvier's Law Dictionary), and, where the exception is clearly expressed and is within the constitutional power of the Legislature, those who question its justice, wisdom or policy must seek the remedy at the hands of the Legislature itself. As already stated, the court is without power in the premises except to give effect to the statute as it stands. In its general effect this statute as a whole provides a

species of local option whereby the selling or keeping for sale of intoxicating liquors, though generally prohibited, is allowed in counties and other municipalities where the specified conditions and restrictions shall have been properly observed. That which the law permits to be done is lawful, and, as appellant's demurrer admits that appellee has complied with all of the conditions of the mulct tax law, the court did not err in overruling the demurrer, unless we are to hold the statute itself invalid. If, as counsel suggest, the statute itself is as it stands a cowardly evasion, a legislative monstrosity with two faces, one of which smiles encouragement to the prohibitionist, while the other winks indulgently to the liquor dealer, a product born of political coyness which, while saying it would "ne'er consent, consented," yet these considerations can be allowed no weight by the court. The inquiry here is one of legislative power to enact the statute, and to that we shall give our attention in the next paragraph of this opinion.

II. Preliminary to his contention that the mulct statute is void, appellant calls our attention to *Santo v. State,* 2 Iowa, 165; *Thurlow v. Commonwealth,* 46 U. S. 504 (12 L. Ed. 256), and the many other cases of like import in which the courts have recognized in forceful language the dangers and demoralizing tendencies of the traffic in intoxicants— a proposition from which few if any courts, and very few candid and intelligent observers, will dissent. From this groundwork the argument proceeds that, such being the recognized character of the traffic, it is to be treated as a public nuisance *per se,* and that, such being its essential character, the Legislature is without constitutional power to give it a legalized existence. It is conceded that this alleged constitutional limitation upon the legislative power is not to be found in the express terms of our fundamental

*3. SALE OF LIQUOR: nuisance: constitutional law.*

law, and we are asked to imply it from that clause of the Bill of Rights which declares that "government is instituted for the protection, security and benefit of the people" (Const. Iowa, article 1, section 2), and from the language of the Declaration of Independence, incorporated in our State Constitution (article 1, section 1), and from the general welfare clause in the preamble to the Constitution of the United States, and from similar provisions embodied in the Ordinance of 1787. Following this line of reasoning, the argument of counsel, by natural gradation, reaches the conclusion that there is an "unwritten Constitution," the requirements of which should have judicial recognition, and that, even if we can point to no specific clause or provision which by express terms or necessary implication imposes the alleged limitation upon legislative authority, yet if the statute is inconsistent with what is called "the spirit of the Constitution," it is the duty of the court to hold it void and of no effect.

Turning first to the question whether such a limitation upon the functions of the Legislature may fairly be drawn from any provision of our Constitution, we think it very clear it must be answered in the negative. The constitutional declaration that government is instituted for the protection, security, and benefit of the people is a fundamental principle or maxim accepted by all believers in government of the people by the people; but it by no means follows, as argued by counsel, that authority is thereby denied to the General Assembly to "pass any law which would injuriously affect the peace, safety, and welfare, of the people," or "to pass any law which will do an injustice or a wrong, or to permit any immoral thing." The clause on which reliance is placed by the appellant is one of the declarations of the Bill of Rights; the entire section read as follows: "All political power is inherent in the people. Government is instituted for the protection, security and

benefit of the people; and they have the right at all times to alter or reform the same whenever the public good shall require it." This, as will be seen, has no immediate reference to restraints imposed upon the legislative department of government, but is, rather, a declaration of the reserved or natural right of the people to alter or amend their form or scheme of government whenever in their judgment such alteration or amendment will promote the general good. To say that the Legislature can not enact a valid law which works an injustice or wrong or injuriously affects public interests or legalizes an immoral thing is a proposition which will not stand investigation. In its last analysis, it makes the test of the validity of every statute its conformity to the court's conception of the moral law, and not to the terms of the Constitution. To say, as we must, that laws which work wrong and injustice and injuriously affect public interests are very frequently enacted, is only to say that legislators are human; but no law has ever yet been declared unconstitutional by a court of last resort simply because it works a public wrong or injury, unless that wrong or injury be one against which some specific constitutional inhibition may be pointed out. Taxation may be grossly oppressive and injurious to public interests, but is not therefore necessarily unconstitutional. A statute providing for easy divorce may undermine the integrity of family and home life and tend to the demoralization of society, but is not therefore unconstitutional. Common-law crimes are not punishable in this State unless re-enacted or expressly recognized by statute, and the Constitution imposes no obligation upon the Legislature to prohibit or criminally punish any specific act, even though it be grossly offensive to the moral sense of mankind. The statute which repeals or minimizes the penalty against murder, theft, adultery, prostitution, lewdness, gambling, and other acts notoriously tending to riot

and social degradation is not void for unconstitutionality. The same is true in regard to most of the civil remedies which the law provides for public and private wrongs. So far as individual rights are concerned, the constitutional guaranties of jury trial, inviolability of contracts, due process of law, and other similar safeguards, place them beyond the reach of unfriendly or destructive legislation; but we seek in vain for any declaration, provision or suggestion in the language of the Constitution which denies or limits the power of the State, acting through its Legislature, to control absolutely the employment of civil process for the prevention or punishment of any wrong affecting the public welfare. There is no common-law or recognized equitable right in the private citizen to an injunction against threatened commission of crime or other public wrong not involving special injury to the property rights of the complainant. The subject-matter of equity jurisdiction, except when enlarged by statute, is the protection of private property and civil rights, and courts of equity will not interfere by injunction or otherwise for the prevention or punishment of criminal or immoral acts unconnected with the violation of private right. Nor will it undertake to enforce moral obligations nor the performance of moral duties. 1 High on Injunctions (4th Ed.) section 20; 6 Pomeroy's Equity, section 644; 22 Cyc. 902; *Sheridan v. Colvin*, 78 Ill. 237.

The right of injunction has been denied for the restraint of Sabbath breaking (*Sparhawk v. Railroad*, 54 Pa. 401; *Ass'n v. Schurch*, 57 N. J. Eq. 268, 41 Atl. 914); maintenance of a gambling house (*People v. District Court*, 26 Colo. 386, 58 Pac. 604, 46 L. R. A. 580); *State v. Patterson*, 14 Tex. Civ. App., 465 (37 S. W. 478); the keeping of a house of ill fame where no special injury to plaintiff's property rights is shown (*Anderson v. Doty*, 33 Hun [N. Y.] 160; *Neaf v. Palmer*, 103 Ky.

496, (45 S. W. 506, 41 L. R. A. 219); gambling on a
public fair ground (*Cope v. Ass'n,* 99 Ill. 489, 39 Am.
Rep. 30); the keeping of a bucket shop (*Commissioners
v. Board of Trade,* 92 Ill. App. 604; *Christenson v. Kellogg,* 110 Ill. App. 61); the maintenance of a public
nuisance (*Smith v. Lockwood,* 13 Barb. [N. Y.] 209);
the fouling of a stream in violation of law (*Tiede v.
Schneidt,* 99 Wis. 201, 74 N. W. 798); maintenance of
race track and pool room (*State v. O'Leary,* 155 Ind.
526, 58 N. E. 703); the illegal selling of intoxicating
liquors (*Campbell v. Schofield* [Pa.] 29 Leg. Int. 325;
*O'Brien v. Harris,* 105 Ga. 732, 31 S. E. 745)—which
list might be indefinitely prolonged, showing a uniformity
of adjudication upon questions of this same general nature.

It required the enactment of this statute, Code, section 2405, to authorize a court of equity to enjoin the
maintenance of a place of business for the sale or keeping
of intoxicating liquors as a public nuisance,
4 EQUITY JUR-   and, the right being of statutory origin, it
ISDICTION:      may be modified or taken away by the power
injunction.
which created it. Except in cases brought in pursuance of
this particular statute, this court has repeatedly adhered
to the generally accepted doctrine that injunction will
not lie at the suit of an individual to restrain a public
nuisance which affects him only as one of the general body
of citizens. *Prince v. McCoy,* 40 Iowa, 533; *Innis v.
Railroad Co.,* 76 Iowa, 167; *Ewing v. Webster City,* 103
Iowa, 226.

Thus far we have considered the case upon appellant's
assumption that the business of selling intoxicants and
keeping the same for sale is contrary to the
5. SALE OF LI-  established principles of common law, and,
QUOR: legis-
lative regu-    without regard to any regulation or license
lation.
of such traffic, is *per se* a public nuisance. In dis-

cussing this proposition we must not, as we fear counsel in their argument sometimes do, overlook the distinction between the ideal and the actual—the law as it is and as we would have it. Though sometimes rated as a science and called by its votaries the "perfection of human reason," having its origin and "throne in the bosom of God," it remains true that, when we descend from the realm of poetry to fact, and view the law in practical operation, it lacks both scientific and moral perfection, and the marks of its supposed celestial origin are found to have suffered no little obscuration. Law for the regulation of conduct of men in their relations to each other is the product of a slow evolution. In its early history it offered protection to only the simplest and most obvious rights of person and property—rights which the people in the rudest stage of civilization naturally and instinctively recognized as pertaining to the individual. The corresponding duty of the individual to serve the general good and to refrain from conduct which may endanger society in general by corrupting or demoralizing its members was a truth of much later recognition and much slower in finding legislative and judicial enforcement. Even yet, while the abstract proposition is quite universally conceded, the extent to which such social obligations ought to be embodied into positive law and enforced by the State remains the subject of question and debate. Prominent among these subjects is that pertaining to the regulation or prohibition of the sale of intoxicants. It is only within the last century —indeed, within the memory of living men—that the harmful tendencies of this traffic awakened anything like general discussion or any serious effort to put it under the ban of the law. It was recognized as a legitimate business at common law. *People v. Cregier,* 138 Ill. 401 (28 N. E. 812); *Welsh v. State,* 126 Ind. 71 (25 N. E. 883, 9 L. R. A. 664); *State v. McGrew,* 11 Iowa, 112;

Bishop's Criminal Law, sections 505, 1113; Black on Intoxicating Liquors, section 114; 23 Cyc. pages 161-172; 18 A. & E. Encyc. Law (2d Ed.) 318-328; *Commonwealth v. McDonough,* 13 Allen (Mass.) 581. To hold otherwise is to shut our eyes both to the development of the law of England and her American colonies and the history of the English speaking world. It is true that with the passage of time the public conscience has become aroused to the dangerous character and influence of the unchecked traffic, and in practically every jurisdiction in this country much effort has been put forth to minimize or suppress its attendant evils by law. Results thus far accomplished are seen in license regulations of various degrees of stringency, schemes of local option and State-wide prohibition, all of which have appealed to the favor of legislative bodies in different sections of our country. Almost without exception the courts have everywhere taken notice of the deleterious effects and influences that follow in the train of this business and have manifested a willingness to give full effect to every law enacted to suppress them, but not in all of the thousands of cases in which the subject has been treated or ruled upon do we find a single authoritative precedent holding that, independent of statute, the court has any jurisdiction whatever to order the suppression of it. Neither Constitution nor statute attempts to re-enact all the obligations or commands of the moral law. There are innumerable duties appealing to the hearts and consciences of men in their dealings and relations with others which the State can not attempt to enforce. The general moral level of legislation will always reflect the general moral level of the people, and, when the latter has reached an elevation where it demands the enactment of laws more nearly approximating ideal standards, they will not long remain wanting. The duty of observing the changed conditions and needs of society and providing

laws fitted to the demands of the hour is vested in the Legislature alone. The fact that, judged by the higher standards of right and wrong, the selling of intoxicating liquors is an inexcusable act working harm to the community where it is permitted does not of itself give rise to a cause of action at law or in equity.

The legislative and judicial departments of government are distinct, and neither can rightfully pass the boundary which separates their spheres of action. Conceding, as we may, the truth of appellant's arraignment of the traffic, it presents a case for the serious consideration of the lawmaking power; but, until that power shall provide the remedy, the courts must refrain from interference. Appalling results follow the use of opium, cocaine, morphine and other deleterious drugs, and the sale of such articles may properly be subjected to rigid regulation or prohibited by law, yet counsel would hardly insist that, in the absence of a statute authorizing such remedy, the court may rightfully declare the dealer's place of business a nuisance and enjoin it at the suit of a private citizen. The position of appellant in this respect is in no manner advanced by reference to the unenumerated or reserved rights which the Constitution recognizes as remaining with the people. It is doubtless from this fountain of reserved right that we draw our police power to which laws regulating or prohibiting the sale and keeping of intoxicants are referable. We may concede to the people the undoubted right to wipe out utterly and forever this or any other public evil or wrong; but, until a new or amended Constitution shall otherwise provide, its accomplishment must be worked out through the orderly methods of legislation, and thereafter through the administration and enforcement of such laws by the judicial and executive branches of the government. Wherever prohibition of an act which was not obnoxious to the common law is found to be essential

or desirable for the proper protection of the public interests, the remedy is primarily with the Legislature. The courts may within due limits apply old principles to new and changed conditions, but it is not within their province to enact new law or to place the brand of crime upon acts which have heretofore been lawful. These conclusions are in no manner inconsistent with the well-established rule of law that a nuisance which affects the value, use, or enjoyment of private property may be enjoined or abated at the suit of the person thus injuriously affected. Indeed, it has been held that a licensed saloon, which thus injuriously affects the property rights of an individual citizen, may be enjoined at his instance. *Haggart v. Stahlin,* 137 Ind. 43 (35 N. E. 997, 22 L. R. A. 577). But the opinion which thus holds is also careful to recognize that the traffic is lawful where not expressly prohibited by statute. It is not unnatural that enthusiasm for reform of admittedly evil conditions breeds impatience in the minds of good people over the slowness with which humanitarian movements crystallize into effective statutes, and leads them to hail with eagerness the offered hope of some short route to the same end through the courts. If such a route exists, it is, of course, their undoubted right to pursue it; but, if it does not exist, the righteousness of the purpose to be subserved can not justify the courts in creating one at the expense of established principles or by usurping legislative functions.

Nor are we allowed to appeal to an unwritten Constitution or to the spirit of the Constitution to find either rights or limitations which can not be found or fairly im-

6. CONSTITUTIONAL LAW: statutes. plied from the language of the written instrument. It may be admitted that here and there may be found a law writer or court speaking academically of an "unwritten Constitution," or shoring up a tottering argument by appealing in a tentative way

to "the spirit of the Constitution," for support which no amount of ingenuity can extract from the writing itself; but fortunately these instances are rare and have found slight favor with the courts in general. We have ourselves refused countenance to the doctrine. In *McGuire v. Railroad Co.*, 131 Iowa, 356, we said that courts are not at liberty to declare an act void merely because in their judgment it violates the spirit of the Constitution. They must be able to point out the specific provision expressed or clearly implied from what is expressed, which the act violates. See, also, Cooley's Constitutional Limitations, chapter 7. This is not to deny that wherever the language of the Constitution is obscure, doubtful, or ambiguous, or by the generality of its terms leaves fair room for implication, it is open to construction in aid of which courts may properly consult the general spirit of the instrument as indicated by its terms as a whole, by its development and history, by the tenor of the debates in the convention which framed it, by the nature of the rights and interests sought to be promoted by it, as well as of the evils or dangers sought to be avoided or remedied, and from these and other extrinsic circumstances determine as accurately as possible what those who wrote it and the people who adopted it intended to express by the words employed. But the nature and object of all construction is to arrive at the meaning and effect of the particular words under consideration, and, when that meaning is found, it is still the written Constitution which must govern us and furnish the ultimate standard by which the validity of all statutes is to be tested. It is not necessary here to affirm or deny the existence of reserved or unenumerated rights inherent in the people and of which no specific mention is made. The question presented by the appeal is whether the courts, failing to find any constitutional provision expressly or impliedly in point, may still declare a given statute void because it is violative of an

assumed unwritten Constitution or because it is out of harmony with the court's conception of the general spirit of the written instrument. To our minds the suggestion is one filled with danger. To acknowledge an unwritten Constitution is to create a mere legal fog bank into which every court experimentally inclined may enter and return laden with some new theory of governmental powers and limitations until the written charter framed by our fathers and solemnly ratified by the people is relegated to the shelf of forgetfulness. Who may define its terms? Who can trace its limitations? We are no less at a loss when we undertake to segregate and personify the "spirit of the Constitution" as affording a source of authority independent of its letter. Like other spirit forms it is indefinable, intangible and elusive, attractive to the imagination of the theorist, but fading at the touch like "the baseless fabric of a vision." No two courts will see it from the same angle, and their several views may be wholly irreconcilable, and the arbiter who enters the same cloudland to decide between them will likely disagree with both. The Constitution as it is written affords the one and only safe anchorage. It operates, not as a grant of power to the State or to its General Assembly, but as a limitation thereon, and all powers not thereby expressly or impliedly withheld may be constitutionally exercised. See *McGuire v. Railroad Co.,* 131 Iowa, 349, and cases there cited.

Our Constitution, as it stands, contains no provision expressly or impliedly denying to the State the right to permit or license or prohibit the sale of intoxicating liquors. The whole subject is therefore one upon which the Legislature may constitutionally exercise its discretion. Everybody concedes that it may enact State-wide prohibition, and statutes to that effect have been held valid by this court. If it has discretion to enact prohibition, it follows of necessity that it may repeal or amend or modify the law of its own making.

It follows that the mulct tax law, coming as it does within the scope of the principles thus announced, is neither unconstitutional nor void. None of the exceptions urged by the appellant can be sustained.

The judgment of the district court was correct, and is *affirmed.*