JOHN MOTE et al., Appellants, v. INCORPORATED TOWN OF CARLISLE et al., Appellees.

No. 40090.

DECEMBER 9, 1930.

*Howard L. Bump* and *Paul W. Walters*, for plaintiffs-appellants.

*C. C. Putnam* and *Paul H. Williams*, for C. W. Roland Co., and Thorpe Bros. Well Co., appellees.

*W. M. Wilson* and *J. O. Watson*, for Incorporated Town of Carlisle, Walter Fleming, Fred Garnet, F. D. Wertman, A. C. Seid, and William Kail, appellees.

KINDIG, J.—The Town of Carlisle has a population of approximately 740, and is located about 12 miles southeast of Des Moines. Sometime in January, 1928, the citizens of that town

 commenced an agitation for the establishment of waterworks. Finally, a petition for an election to vote on the proposition was circulated, and signed by the statutory number of citizens. Accordingly, the election was called, and held February 3, 1928. Conforming to the foregoing petition, the ballot at the election contained the following question:

"Shall the town of Carlisle, in Warren County, Iowa, establish and erect a municipal waterworks system and contract indebtedness for such purpose not exceeding $27,000.00 and issue bonds for such purpose not exceeding $27,000.00 and levy a tax annually upon the taxable property in said town of Carlisle, Iowa, not exceeding 25 mills per annum, for the payment of such bonds and interest thereon?"

When the ballots were counted, it was found that the necessary number voted in favor of the proposition. Thereafter, the bonds were issued and sold, and plans and specifications adopted by the city council, conforming to the foregoing ballot and petition. Then work progressed upon the project until about July 1, 1928, when it was found that the money received from the bond issue was not sufficient to establish and erect the desired water system. It appears that the well had been drilled to a depth of 300 feet, but that it did not furnish water enough. Too, more main extensions seemed desirable. Consequently, it was necessary to devise means whereby the additional money could be raised. Investigation ensued, and, after the consideration of different propositions, it was finally concluded that a plan could be devised for raising the funds, and the aforesaid extra work was done for the establishment and erection of the waterworks. Apparently the defendant-appellee town, through its council, offered the appellees Thorpe Brothers Well Company and C. W. Roland Company waterworks certificates, to be paid from the earnings of the plant. At any rate, that proposition was finally abandoned, and, on February 12, 1929, a resolution adopted by the town council, providing for the issuance of town warrants as follows: To the appellee Thorpe Brothers Well Company, $1,356.35; to the appellee C. W. Roland Company, $4,018.30. Those proposed warrants, however, were antedated, to indicate

that they were issued on July 31, 1928. Hence, on February 20th thereafter, the plaintiffs-appellants, being taxpayers of Carlisle, instituted the present proceedings, to enjoin: First, the appellees town of Carlisle and its officers from issuing and delivering certain warrants to the appellees Thorpe Brothers Well Company and C. W. Roland Company; and second, the said town and its officers from paying or in any way recognizing the claims of the Thorpe Brothers Well Company and C. W. Roland Company, for which the aforesaid warrants are proposed to be issued and delivered.

While that action was pending, the town, or those interested in the warrants, believing that there was serious question concerning the validity of these warrants, obtained from the Iowa  legislature a curative act, which appears in Chapter 378, Acts of the Forty-third General Assembly, at page 449. That act purported to cure certain defects in the proceedings leading up to the issuance of the warrants. Section 3 of the aforesaid curative act contains the following proviso or exception: "Nothing in this act shall affect any pending litigation." Following the legislative action, the cause was submitted to the district court, and the warrants were declared valid, and in full force and effect.

One ground for reversal relied upon by the appellant is that the curative act before mentioned, because of the proviso or exception, could not in any way affect this particular litigation which was pending when the legislature acted in the premises.

I. A curative act may be adequate to remedy a defect in the warrants even though an action attacking their validity was at the time pending, if there is no exception or limiting proviso in the legislation. *State v. Squires,* 26 Iowa 340 (local citation 348); *Iowa Railroad Land Co. v. County of Sac,* 39 Iowa 124 (local citation 150); *City of Clinton v. Walliker,* 98 Iowa 655 (local citation 660). Illustration of the thought under consideration may be found by quoting a brief excerpt from the last-named case. Among other things, it is declared in the *Clinton* case:

"There is no doubt that this act [curative act] was passed for the very purpose of legalizing the proceedings of the city council of Clinton in relation to the paving of its streets. It

was passed after this action [attacking the validity] was commenced. If valid in other respects, the fact that this action was then pending does not affect the curative act.''

When, however, pending litigation is made a proviso limiting the effect of the legislation, or an exception from the result of the act, a conclusion different from that announced in the foregoing cases must be reached. *Campbell v. Jackman Bros.*, 140 Iowa 475 (local citation 480, 481). In that case we said, on page 480:

''The effect of any sweeping, general statutory provision which is followed by or coupled with an express exception naturally and necessarily depends upon the nature and extent of the exception; and, if this be of such character as to emasculate the principal clause or render any of its terms meaningless, the courts are, nevertheless, required to give effect to such exception, whatever they may think of the candor or want of candor which controlled the phraseology of the law.''

Earlier, we declared, in *Rice v. City of Keokuk*, 15 Iowa 579, on page 583:

''This view [the one previously expressed in the opinion] also harmonizes with the acknowledged rule of construction that a proviso will generally be considered not to enlarge, but rather to restrain, qualify, or explain the clause to which it refers.''

Likewise, the Supreme Court of New Jersey, in *State v. Inhabitants of Township of Kearny*, 55 N. J. Law 50 (25 Atl. 327, 328), on page 53, suggested:

''Mr. Sedgwick, in his work on Statutory Construction (page 49), says: 'A curious rule of a very arbitrary nature prevails with regard to provisos. It is that, when the proviso of an act of Parliament is directly repugnant to the main body of it, the proviso shall stand, and be held a repeal of the purview, as it speaks the last intention of the makers.' Chancellor Kent, in Volume 1 of Commentaries (page 463), says: 'It is difficult to see why the act should be destroyed by the one and not by the other, or why the proviso and the saving clause, when inconsistent with the body of the act, should not both of them be equally rejected.' * * * in *Townsend v. Brown*, 4 Zab. 80, 86, Chief Justice

Green declared 'that the rule had long been established that, if a proviso in a statute be directly contrary to the purview of the statute, the proviso is good, and not the purview, because it speaks the later intention of the legislature.' In the disposition of the case in hand, that must be conceded to be the law.''

During its discussion in *United States v. Jackson*, 75 C. C. A. 41 (143 Fed. 783, 787), the United States District Court said, on page 45:

''This is a congressional act, and must be interpreted according to the intention of Congress, apparent upon its face. * * * Another well-settled rule of construction applicable to these cases is that, where there is an irreconcilable conflict between different parts of the same act, the last in the order of arrangement will control.''

While considering this subject-matter, courts have seen fit to distinguish between exceptions and saving clauses. See *State v. Inhabitants of the Township of Kearny*, 55 N. J. Law 50 (25 Atl. 327), supra. Yet, regardless of such technical discussions, the present so-called exception is in the nature of a proviso, the provision being that the act is contingently defeated. Without entering into technical discussions concerning definitions, it is enough to say that the plain intention of the legislature was that the so-called curative act should not apply to pending litigation. Lawyers generally understand that the proviso, or exception, under consideration defeats the act, so far as the pending litigation is concerned. As said in *Campbell v. Jackman Bros.*, (140 Iowa 475), supra, if the exception ''be of such character as to emasculate the principal clause or render any of its terms meaningless, the courts are, nevertheless, required to give effect to such exception * * *.'' Even if, as appellees assert, no meaning could be given to the curative act unless it does apply to pending litigation, the result must be the same. We do not here decide that the curative act does not have application. For instance, the act has effect against all attacks except those involved in the pending litigation.

Therefore, because of the exception or proviso and the law applicable thereto, we are constrained to hold that the curative act could not affect this pending litigation; and if the warrants were invalid without the curative act, they still are void.

II. Appellees contend, however, that the warrants are valid without the legalizing statute. With that idea we disagree. The very purpose of the appellee town's venture was to establish and erect a water system. Consequently, its power in the premises is controlled by statute (Sections 6127, 6131, and 6132 of the 1927 Code). If the town has not complied with the statutory mandates, it has no power to issue the warrants. Section 6131, supra, provides:

"No such works or plants [waterworks] shall be authorized, established, [or] erected * * * unless a majority of the legal electors voting thereon vote in favor of the same."

Here there was an election to build a plant under certain specifications to the extent of $27,000. After that money was spent, however, the plant was not yet completed or erected, and the plans were extended, to include a deeper well and more mains, without a vote by the people, as required by the foregoing section. Thereby a plan was used and the waterworks installed different from the one authorized. Thus the waterworks finally established and erected were materially at variance with the original, and therefore the first authorization of the electorate did not cover the later expenditures. Hence at no time were the waterworks established and erected until the second work was done. Before that time, the waterworks were not complete, because there was not water enough for the town. A distinction, then, appears between the facts involved in this case and those embraced in *Muscatine Lighting Co. v. City of Muscatine*, 205 Iowa 82. In the *Muscatine* case, the utility was completed to the extent that it could be and was used; while in the case at bar, the well drilled under the original plans was never used, because those in charge believed that the water supplied thereby would not be sufficient. To supply the deficiency in water furnished by the well thus drilled, the additional contract was authorized. Before the well was so completed, the waterworks manifestly were not constructed and erected. The extensions of the mains were all installed before the well was completed, and hence those mains were extended before, and not after, the waterworks were completed and erected. That being true, all the work done, including both that authorized and that unauthorized by the election, was part of the establishment and erection of the waterworks. An authorizing vote,

therefore, was necessary, under the statute. Even though the original proposition was voted upon, the additional expenditures were launched for the purpose of completing the original establishment and erection. Consequently, the second work installed amounted to the establishment and erection of the waterworks, just the same as the first undertaking. Accordingly, under the statute, a vote was imperative, because waterworks cannot be established and erected without authority from the people. No subterfuge or circumvention can prevent that result. *Muscatine Lighting Co. v. City of Muscatine* (205 Iowa 82), supra. Both the original construction and the final work were part of one and the same establishment and erection. Were they not so, the statute could be entirely overcome and circumvented by scheming town officials, who might seek to avoid the provisions thereof by splitting "the establishment and erection of the waterworks" into legally inseparable parts.

Whatever was done by the appellee town in the case at bar involved the one purpose: to wit, establishing and erecting the complete waterworks. Until the well was deep enough to furnish sufficient water, the "establishment and erection" were not completed. So it was essential that the appellee town comply with the foregoing statutory provisions, and permit the electors therein to authorize the expenditure for the whole establishment and erection. Unless the electorate of the appellee town authorized the expenditure, there was no power in the municipality to incur it. *Van Eaton v. Town of Sidney,* 211 Iowa —; *Muscatine Lighting Co. v. City of Muscatine* (205 Iowa 82), supra; *Incorporated Town of Mapleton v. Iowa L., H. & P. Co.,* 206 Iowa 9; *Iowa Elec. Co. v. Incorporated Town,* 198 Iowa 196.

Not having obtained the necessary authority from its electorate, the town had no right to issue the warrants.

By the foregoing we do not indicate or suggest what, if any, the limitations may be on a city or town to extend the waterworks after the same have once been erected and established.

III. But appellees argue that the waterworks have been erected and completed, and the appellee town is now enjoying the same. Wherefore, it is said, the appellants are estopped from asserting the invalidity of the warrants.

It is enough to say that the appellees did not plead any such

defense. What our conclusion would be, had estoppel, or any other affirmative defense, been pleaded, we do not now indicate.

IV. In addition to having the town enjoined from issuing the warrants under consideration, the appellants ask that the municipality also be restrained from "in any way recognizing the claim asserted by the" appellees Thorpe Brothers Well Company and C. W. Roland Company. By that, appellants seem to argue that appellees' claim involves something more than their rights under the warrants. To this relief we feel the appellants are not entitled at this time.

The record indicates that the city was about to deliver the warrants to the appellees Thorpe Brothers Well Company and C. W. Roland Company, respectively. No showing is made that the town is about to recognize the claims of those appellees on any other basis. Without evidence suggesting that the town is going to allow some other claim, it cannot be enjoined from so doing. An injunction will not issue to restrain the town from doing that which it is not going to do. Claim of no kind was made by the appellees Thorpe Brothers Well Company and C. W. Roland Company except through the warrants; and, so far as the record discloses, the town does not propose to pay those appellees on any other basis.

Whether the appellees Thorpe Brothers Well Company and C. W. Roland Company may recover on the theory of a quasi contract, estoppel, quantum meruit, or any other doctrine, we do not now decide or suggest, because the point is not raised in the issues. This shall not be an adjudication against appellees' right to recover, if they may, under any of the aforesaid theories.

V. Contention is made by appellants that the appellees Thorpe Brothers Well Company and C. W. Roland Company agreed to accept the waterworks certificates before named in full payment of their respective claims. The record, however, does not sustain this contention. At no time did either of these appellee claimants agree to make an absolute acceptance of the certificates.

Wherefore, as indicated by the foregoing discussion, the appellants are entitled to an injunction restraining the town of Carlisle from issuing the warrants in question, and the judgment and decree of the district court refusing that right is hereby re-

versed; but the judgment and decree of the district court so far as it declines to compel said appellee claimants to accept water-works certificates is affirmed.—*Affirmed in part; reversed in part.*

MORLING, C. J., and EVANS, FAVILLE, DE GRAFF, ALBERT, WAGNER, and GRIMM, JJ., concur.

STEVENS, J., dissents on Division II.